IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NORTH STAR ALASKA HOUSING CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1396C |
| v. | ) | (Judge Allegra) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

MOTION TO DISMISS CERTAIN CLAIMS
FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant, the United States, requests that the Court, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, dismiss for lack of subject matter jurisdiction fourteen claims that plaintiff, North Star Alaska Housing Corp. ("North Star") raises in this case. Those claims have not been presented to the contracting officer.

North Star invokes the Contract Disputes Act, 41 U.S.C. § 601, et seq., as the source of this Court's jurisdiction. Complaint For Damages And Declaratory Relief ("Compl.") ¶ 1. When submitting a complaint to this Court pursuant to the Contract Disputes Act, a contractor may not raise any new claims not presented to the contracting officer. See Santa Fe Eng'rs, Inc. v. United States, 818 F.2d 856, 858 (Fed. Cir. 1987). The claim submitted to the contracting officer must be one that "gives the contracting officer adequate notice of the basis and amount of the claim." See Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987). If the

contractor seeks monetary damages, the claim to the contracting officer must have stated a sum-certain amount or an amount that can be easily determined by a simple mathematical equation or from the contractor's submission to the contracting officer in order for the Court to possess jurisdiction to entertain the claim for monetary damages. See Metric Constr. Co., Inc. v. United States, 14 Cl. Ct. 177, 179-80 (1988). The Court should dismiss the following claims for failure to present those claims to the contracting officer.

First, North Star seeks monetary damages allegedly arising from carpet replacement and sealing in Birchwood Homes Units 711, 1048, and 813. Compl. ¶¶ 12-15, 101, 105. North Star submitted a claim to the contracting officer related to those units on October 10, 2003. Compl. ¶ 14. In that submission, however, North Star did not present a claim for any specific monetary amount; rather, it requested that the contracting officer decide the necessity and financial responsibility for carpet replacement in those units. Appendix ("App.") 1.

Second, North Star seeks monetary damages allegedly arising from carpet replacement in Units 717, 613, 1153, and 1254. Compl. ¶¶ 16-18, 101, 105. North Star submitted a claim to the contracting officer related to those units on October 27, 2003. Compl. ¶ 17. In that submission, however, North Star did not present a claim for any specific monetary amount; rather, it

requested that the contracting officer decide the necessity and financial responsibility for carpet replacement in those units. App. 4.

Third, North Star seeks monetary damages allegedly arising from carpet replacement in Unit 1227. Compl. ¶¶ 19-23, 101, 105. North Star submitted a claim to the contracting officer related to Unit 1227 on October 28, 2003. Compl. ¶ 23. In that submission, however, North Star did not present a claim for any specific monetary amount; rather, it requested a contracting officer's decision "regarding the financial responsibility" for the carpet replacement. App. 5.

Fourth, North Star seeks monetary damages allegedly arising from vinyl replacement in Unit 701. Compl. ¶¶ 24-26, 101, 105. North Star submitted a claim to the contracting officer related to Unit 701 on October 28, 2003. Compl. ¶ 25. In that submission, however, North Star did not present a claim for any specific monetary amount; rather, it requested a contracting officer's decision "regarding the financial responsibility" for the vinyl replacement. App. 6.

Fifth, North Star seeks monetary damages allegedly arising from countertop replacement in Units 604 and 1150.[1] Compl.

---

[1] The reference in ¶ 31 of the complaint to Unit 640 is, evidently, a typographical error that should read "Unit 604". Compl. ¶ 35; App. 10.

¶¶ 31-36, 101, 105. North Star submitted a claim to the contracting officer related to those units on December 22, 2003. Compl. ¶ 35. In that submission, however, North Star did not present a claim for any specific monetary amount; rather, it requested a contracting officer's decision regarding whether the Government was financial responsible for the countertop replacement. App. 10.

Sixth, North Star seeks monetary damages allegedly arising from flood damage in Unit 952. Compl. ¶¶ 37-42, 101, 105. North Star submitted a claim to the contracting officer related to Unit 952 on January 21, 2004. Compl. ¶ 41. In that submission, however, North Star did not present a claim for any specific monetary amount; rather, it requested a contracting officer's decision regarding whether the flood damage was an "act of God," and "whether the Government would continue to make rental payments to North Star while North Star conducted repairs on the unit." App. 11.

Seventh, North Star seeks monetary damages allegedly arising from carpet replacement in Unit 863. Compl. ¶¶ 43-51, 101, 105. North Star submitted a claim to the contracting officer related to Unit 863 on March 8, 2004. Compl. ¶ 50. In that submission, however, North Star did not present a claim for any specific monetary amount; rather, it requested a contracting officer's decision upon whether the Government was required to issue a

"work authorization" to replace the carpet, and whether the contracting officer agreed with certain determinations of the contracting officer's representative regarding the condition of the carpet. App. 15.

Eighth, North Star seeks monetary damages allegedly arising from the cleaning of Units 1254, 1098, 806, and 619. Compl. ¶¶ 67-70, 101, 105. North Star submitted a claim to the contracting officer related to those units on December 9, 2003. Compl. ¶ 70. In that submission, however, North Star did not present a claim for any specific monetary amount; rather, it requested a contracting officer's decision "to determine if North Star will be given the amount of time that is determined by North Star to do the work and that North Star's downtime allowance will be adjusted accordingly to complete the change of occupancy work based upon North Star's determination of downdays required to do the work." App. 8.

Ninth, North Star seeks monetary damages allegedly arising from carpet replacement in Unit 807. Compl. ¶¶ 71-75, 101, 105. North Star submitted a claim to the contracting officer related to Unit 807 on June 28, 2004. Compl. ¶ 74. In that submission, however, North Star did not present a claim for any specific monetary amount; rather, it requested a contracting officer's decision "regarding the Government's charge to North Star for

[an] additional seven downdays" for time spent replacing the carpet. App. 21.

Tenth, North Star seeks monetary damages allegedly arising from the Government's failure to provide North Star notice of acceptance inspections of Birchwood units. Compl. ¶¶ 76-79, 101, 105. North Star submitted a claim to the contracting officer related to those units on April 12, 2004. Compl. ¶ 78. In that submission, however, North Star did not present a claim for any specific monetary amount; rather, it requested a contracting officer's decision regarding whether the Government was required to provide notice of acceptance inspections. App. 18.

Eleventh, North Star seeks monetary damages allegedly arising from the Government's inclusion of occupant damage and "self help" items on deficiency lists generated as the result of acceptance inspections. Compl. ¶¶ 80-82, 101, 105. North Star submitted a claim to the contracting officer related to that practice on April 12, 2004.[2] App. 19. In that submission, however, North Star did not present a claim for any specific monetary amount; rather, it requested a contracting officer's decision regarding whether the Government could include such items on deficiency lists and, if so, whether the Government must

[2] North Star's allegation that it requested a contracting officer's decision on August 12, 2004 (Compl. ¶ 81), is, evidently, a typographical error. App. 19.

issue a work authorization for those items and whether the time for correction of those items could be used to assess downtime against North Star. App. 19.

Twelfth, North Star seeks monetary damages allegedly arising from the Government's delay in conducting acceptance and corrections inspections of Birchwood units. Compl. ¶¶ 83-86, 101, 105. North Star submitted a claim to the contracting officer related to that practice on April 12, 2004. Compl. ¶ 85. In that submission, however, North Star did not present a claim for any specific monetary amount; rather, it requested a contracting officer's decision upon whether the Government can charge North Star with downtime days when North Star does not have a unit in its possession and control. App. 20.

Thirteenth, North Star seeks monetary damages allegedly arising from the contracting officer's representative's lack of independence. Compl. ¶¶ 87-94, 101, 105. North Star submitted a claim to the contracting officer related to that issue on October 10, 2003. Compl. ¶ 90. In that submission, however, North Star did not present a claim for any specific monetary amount; rather, it requested a contracting officer's decision upon the ability of the contracting officer to provide independent assessments of disputed issues. App. 3.

Fourteenth, North Star seeks monetary damages allegedly arising from the Government's diminution of the value of its

asset. Compl. at 4, 20 ¶ 95, 21 ¶ 97. This includes an allegation that the Government's decision "to pursue the ultimate end of lease option of not extending the Lease of Birchwood Homes" will "cause a further diminution in value as a result of the Government's intentional overt acts." Compl. ¶ 97. However, in none of the requests for contracting officer's decisions that are the predicate for this case did North Star present a claim that the Government has diminished the value of Birchwood Homes or a claim challenging a decision not to extend the Birchwood lease.[3] See App. 1-21.

For the foregoing reasons, the Court should grant our motion to dismiss the claims referenced above.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

---

[3] In addition to the requests for contracting officer's decisions discussed above, North Star submitted claims on December 10, 2003, February 12, 2004, March 2, 2004, March 31, 2004, and November 17, 2003. Compl. ¶¶ 53, 56, 59, 62, 65; App. 7, 9, 13, 14, 17.

s/Timothy P. McIlmail
TIMOTHY P. MCILMAIL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 514-4325
Facsimile: (202) 514-7965

OF COUNSEL
ANA-VALLI GORDON
Assistant District Counsel
United States Army Corps of Engineers
Galveston District

July 31, 2006

Attorneys for Defendant

Certificate of Filing

I hereby certify that on July 31, 2006, a copy of the foregoing Defendant's Motion To Dismiss Certain Claims For Lack Of Subject Matter Jurisdiction was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Timothy P. McIlmail