THE UNITED STATES COURT OF FEDERAL CLAIMS

**NORTH STAR ALASKA HOUSING CORPORATION,**

**Plaintiff,**

**v.**

**UNITED STATES OF AMERICA,**

**Defendant.**

**No. 04-1396C**
**Judge Francis M. Allegra**

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CERTAIN CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff North Star Alaska Housing Corporation ("North Star" or "Plaintiff") hereby opposes the Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction filed by Defendant United States of America ("Defendant" or "Government").

## I. INTRODUCTION

The Government seeks to dismiss for lack of subject matter jurisdiction fourteen (14) claims raised by North Star on the ground that they were not properly submitted to the contracting officer.[1] According to the Government, North Star's submissions to the contracting officer were defective because North Star did not request a specific monetary sum.

In its three-count Complaint, North Star alleges that the wrongful actions of the Government have caused North Star to incur substantial damages, have diminished the value of the Birchwood property and constitute clear evidence of the Government's breach of contract and bad faith administration of the Lease. Specifically, Count I alleges that the Government has

[1] For ease of reference, North Star will refer to these claims by the numbering assigned to them in the Defendant's Motion to Dismiss.

breached the contract on multiple occasions and that as a direct and proximate result North Star has suffered damages. Count II alleges that the Government conduct under the Lease represents a course of conduct to inflict injury on North Star. Count III requests the Court find and declare that North Star's interpretations of the contract as set forth in the Complaint were correct. All of the items sought to be dismissed are relevant to Counts II and III and on that basis alone, the Government's motion to dismiss is without merit and should be denied in its entirety.

Moreover, all of the fourteen (14) claims attacked by the Government are properly before the Court because the contracting officer either knew the amount in controversy or the claims were requests for an interpretation of contract terms for which no monetary amount need be stated.

This court has held that a claim need not specify a sum certain if it "can be easily determined by a simple mathematical calculation or from the contractor's submission to the contracting officer." Metric Constr. Co. v. United States, 14 Cl. Ct. 177, 179 (1988). Furthermore, and contrary to what the Government implies in its motion to dismiss, there is no requirement under the Contract Disputes Act of 1978 ("CDA") that a claim be submitted in any particular form or use any particular wording. Contract Cleaning Maintenance, Inc. v. United States, 811 F.2d 586,592 (Fed. Cir. 1987). Nor does the CDA require the court to interpret a contractor's submission in a vacuum and ignore earlier contractor submissions or other discussions among the parties. See Mendenhall v. United States, 20 Cl. Ct. 78 (1990). (Court held contractor's submission was a clear notice of claim in light of the contracting officer's earlier discussions with the contractor.); Metric Constr. Co. v. United States, 1 Cl. Ct. 383, 392 (1983) (Request for 7.5% for bond premium on all change orders was easily determinable since amount of change orders was known to the contracting officer. The contracting officer,

therefore, was in a position to "intelligently and meaningfully give consideration" to contractor's claim.) It is also well-established that several pieces of correspondence or documents together can form a valid claim. GPA-I, LP v. United States, 46 Fed. Cl. 762 (2000), citing, Contract Cleaning Maintenance, supra.

With regard to eight (8) of the subject claims, the contracting officer had sufficient information regarding the amount of North Star's damages to be in a position to make an intelligent and meaningful consideration of North Star's claim. The claims at issue had been the subject of earlier discussions and correspondence between the parties. In fact, with only one exception, prior to the contracting officer's refusal to issue a final decision, North Star had already submitted invoices identifying the amount of its monetary claim. These submissions were based on the agreed "List of Repair Costs", which under the terms of the Lease, governs the costs of correcting damaged units. In fact, even in the absence of North Star's specific invoice submissions, North Star's damages were easily calculable by simple reference to the contractually agreed "List of Repair Costs." Appendix ("App.") 45-91. It is disingenuous for the Government to suddenly take the position that the agreed "List of Repair Costs" has no meaning. Certainly, just as this Court cannot interpret a contractor's claim submissions in a vacuum, the contracting officer cannot close his eyes and ignore information already known to him or ignore information readily available to him. Accordingly, as set forth in Part II A, below, the Government's motion to dismiss Claims 1 through 5 and Claims 7, 8 and 14 must be denied because the amount of North Star's claims were known to the contracting officer and/or were easily calculable. See Metric Constr. Co. v. United States, 14 Cl.Ct. 177, 179 (1988).

The Government's motion to dismiss also ignores the fact that a valid CDA claim need not involve a request for monetary relief. Under the Federal Acquisition Regulations ("FAR"),

the term "[c]laim means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising or relating to the contract." 48 C.F.R. § 2.101 (2006). The Court has held that if a contractor states a non-monetary claim to its contracting officer, there is no requirement for the contractor to have made a request for a sum-certain in order for the Court to possess jurisdiction to entertain the non-monetary claim. Clearwater Constrs., Inc. v. United States, 56 Fed. Cl. 303, 309, 311 (2003). Indeed, the Court has held that a contractor's written claim to its contracting officer seeking an interpretation of contract terms is a valid claim pursuant to the CDA, 41 U.S.C.A. ¶ 605(a). CW Gov't Travel, Inc. v. United States, 63 Fed. Cl. 369, 381-82 (2004). As discussed in Part II B , below, six of the claims which the Government seeks to dismiss are not monetary claims at all, but are claims seeking as a matter of right, an interpretation of contract terms, for which no monetary amount need be stated. All of these nonmonetary claims and indeed all the claims involve recurring issues under the Lease for which a declaratory judgment action is clearly appropriate.

## II. ARGUMENT

### A. The Contracting Officer Knew the Amount of North Star's Claims and/or North Star's Damages Were Easily Calculable Pursuant to the Lease Agreement

**Claim No. 1 - Units 711, 813 and 1048**

By letter dated October 10, 2003, North Star requested a contracting officer's final decision concerning the financial responsibility for the carpet replacement and sealing in Units 711, 813 and 1048. App. 1. By letter dated November 12, 2003, the contracting officer declined to issue a final decision because he contended the claim implicated the same allegations already pending before the Court of Federal Claims. Compl. ¶ 15. At the time the contracting officer declined to issue a final decision, however, he was already in possession of sufficient information

concerning North Star's damages to enable him to make an intelligent and meaningful review of this claim.

Specifically, with regard to Unit 711, as of November 12, 2003, North Star had already submitted invoices totaling $3,245.82. This included a material invoice for $2,316.54 and a labor installation invoice of $929.28. App. 3-4. In September 2003, the Government paid $101.27, leaving a claim balance of $3,144.55. App. 5. With regard to Unit 813, as of November 12, 2003, North Star had already submitted invoices totaling $2,807.03. This included a material invoice of $1,952.77 and a labor installation invoice of $854.26. App. 6-7. In September 2003, the Government paid $70.03 leaving a claim balance of $1,882.74 for Unit 813. App. 8. With regard to Unit 1048, as of November 12, 2003, North Star had already submitted invoices totaling $3,162.05. This included a material invoice of $2,234.58 and a labor installation invoice of $927.47. App. 9-11.

The Government's motion to dismiss North Star's claim relating to Units 711, 813 and 1048 should be denied because the contracting officer was aware of the amount of damages claimed as of the date he declined to issue a final decision. Alternatively, even in the absence of North Star's specific submissions, North Star's damages were easily calculable by reference to the agreed "List of Repair Costs" required by the Lease. App. 45-91, "List of Repair Costs" for the years 2003 and 2004.

**Claim No. 2 - Units 613, 717, 1153 and 1254**

By letter dated October 27, 2003, North Star requested a contracting officer's final decision concerning the financial responsibility for the carpet replacement and sealing in Units 613, 717, 1153 and 1254. App. 12. By letter dated November 12, 2003, the contracting officer declined to issue a final decision because he contended the claim implicated the same allegations

already pending before the Court of Federal Claims. Compl. ¶ 18. At the time the contracting officer declined to issue a final decision, however, he was already in possession of sufficient information concerning North Star's damages to enable him to give an intelligent and meaningful review and consideration of North Star's claim.

Specifically, with regard to Unit 613, North Star had already submitted invoices totaling $3,156.58. This included a material invoice of $2,234.58 and a labor installation invoice of $922.00. App. 13-14. With regard to Unit 717, as of November 12, 2003, North Star had already submitted invoices totaling $3,336.57. This included a material invoice of $2,316.54 and a labor installation invoice of $1,020.03. App. 15-16. With regard to Unit 1153, North Star had already submitted invoices totaling $2,782.77. This included a material invoice of $1,952.77 and a labor installation invoice of $830.00. App. 17-18. The Government paid $131.41, so the total amount due for Unit 1153 was $2,648.36. App. 19. Finally, with regard to Unit 1254 North Star had already submitted invoices totaling $3,162.05. This included a material invoice of $2,234.58 and a labor installation invoice of $927.47. App. 20-22.

The Government's motion to dismiss North Star's claim relating to Units 613, 717, 1153 and1254 should be denied because the contracting officer was aware of the amount of damages claimed as of the date he declined to issue a final decision. Alternatively, even in the absence of North Star's specific submissions, North Star's damages were easily calculable by reference to the agreed "List of Repair Costs" required by the Lease. App. 45-91.

**Claim No. 3 – Unit 1227**

By letter dated October 28, 2003, North Star requested a final decision concerning the financial responsibility for the carpet replacement in Unit 1227. App. 23. By letter dated November 12, 2003, the contracting officer declined to issue a final decision because he

contended the claim implicated the same allegations already pending before the Court of Federal Claims. Compl. ¶ 23. At the time the contracting officer declined to issue a final decision, however, he was already in possession of sufficient information concerning the amount of North Star's damages to enable him to give an intelligent and meaningful review and consideration of North Star's claim. Specifically, as of November 12, 2003, North Star had already submitted invoices totaling $571.56 relating to the carpet replacement in Unit 1227. This included a material invoice of $357.52 and a labor installation invoice of $214.04. App. 24-25. Alternately, even in the absence of North Star's specific submissions, North Star's damages were easily calculable by reference to the agreed "List of Repair Costs" required by the Lease. Accordingly, the Government's motion to dismiss this claim should be denied.

**Claim No. 4 – Unit 701**

By letter dated October 28, 2003, North Star requested a final decision concerning the financial responsibility for the vinyl replacement in Unit 701. App. 26. By letter dated November 12, 2003, the contracting officer declined to issue a final decision because he contended the claim implicated the same allegations already pending before the Court of Federal Claims. Compl. ¶ 26. At the time the contracting officer declined to issue a final decision, however, he was already in possession of sufficient information concerning the amount of North Star's damages to enable him to give an intelligent and meaningful review and consideration of the claim. Specifically, as of November 12, 2003, North Star had already submitted documentation requesting $837.13 for this work. This included a $557.13 material invoice and a $280.00 labor installation invoice. App. 27-29. Alternatively, even in the absence of North Star's specific submissions, North Star's damages were easily calculable by reference to the agreed "List of Repair Costs" required by the Lease. Accordingly, the Government motion to dismiss this claim should be denied.

**Claim No. 5 - Units 604 and 1150**

By letter dated December 22, 2003, North Star requested a final decision concerning the financial responsibility for the countertop replacements in Units 604 and 1150. App. 30. By letter dated, February 19, 2004, the contracting officer issued a final decision denying North Star's claim. Compl. ¶ 36. At the time the contracting officer denied this claim, he was in possession of sufficient information concerning the amount of North Star's damages to enable him to give an intelligent and meaningful review and consideration of the claim, as clearly evidenced by his actual issuance of a final decision. Specifically, as of February 19, 2004, North Star had already submitted documentation requesting $1,060.86 for each of these two units. App. 31-32. Alternatively, even in the absence of North Star's specific submissions, North Star's damages were easily calculable by reference to the agreed "List of Repair" costs required by the Lease. Accordingly, the Government's motion to dismiss this claim should be denied.

**Claim No. 7 – Unit 863**

By letter dated March 8, 2004, North Star requested a contracting officer's final decision concerning the financial responsibility for the carpet replacement in Unit 863. App. 33-34. On April 29, 2004, the contacting officer issued a decision that the Government is required to reimburse North Star for occupant-caused damages, and that such reimbursement had already been accomplished by work authorization. The final decision specifically described the invoices that North Star had submitted for this claim. App. 96; Compl. ¶ 51.

The contracting officer's final decision is clear evidence he was aware that the Government, in March and early April 2004, had agreed to pay 50% of the carpet costs and 25% of the labor costs for Unit 863. See Government Work Authorizations, App. 35-36. The disputed portion of North Star's claim, therefore, was easily calculable at the time the contracting officer

issued his final decision on April 29, 2004, because the Government had already agreed to pay a specific percentage of the claimed amount. Accordingly, the Government's motion to dismiss North Star's claim relating to Unit 863 should be denied.

**Claim No. 9 – Unit 807**

By letter June 28, 2004, North Star requested a contracting officer's decision concerning the Government's wrongful assessment of 7 days of downtime relating to Unit 807. App. 37; Compl. ¶ 71-75. By letter dated July 22, 2004, the contracting officer declined to issue a final decision because he contended the claim implicated the same allegations already pending before the Court of Federal Claims. Compl. ¶ 75.

As the Government is well aware, the monetary detriment to North Star as result of the Government's erroneous downtime calculation arises from the Government's assessment of a rent abatement against North Star pursuant to Section H.(1)(d) of the Lease, which states:

> Developer's Failure to Meet Allowable Change of Occupancy Downtime: If the downtime in any one month for units vacant for purposes of change of occupancy work exceeds the allowable downtime for that month established in accordance with clause D.5.(a)), the Government shall assess liquidated damages based on the most current average daily rate of BAQ plus VHA plus average daily lease cost for each calendar day in excess of the allowable downtime.

Thus, the damages resulting from the Government's interpretation of the downtime provisions of the Lease are easily calculable by the Government – the party who has calculated downtime and abated North Star's rent since February 2002. Accordingly, the Government's motion to dismiss North Star's claim relating to Unit 807 should be denied.

**Claim 14 – Diminution in Value of Property**

North Star seeks monetary damages arising from the Government's diminution of the value of the leased property. The Government has moved to dismiss this claim on the ground it was not submitted to the contracting officer.

The Government knew that its breaches of the Lease diminished the value of the subject property. (See eg. North Star's September 4, 2002 letter to the contracting officer. App. 100-181.) The damages associated with the diminution in value which occurred during the time period covered by the present action (2003 and 2004) were easily calculable by reference to earlier North Star submissions in the prior litigation and the Contracting Officer testified that he knew the Government's action had that effect. App. 182-187. Although the Government has clearly been put on notice that its breaches of contract are diminishing the value of the property, it does not appear that a separate request for a final decision on this issue was submitted to the contracting officer during the time period covered by this action. Accordingly, to the extent the Court finds it lacks subject matter jurisdiction over this claim, North Star requests that it be dismissed without prejudice to North Star's rights to file such claim directly with the contracting officer.

**B. Six of North Star's Claims Were Seeking an Interpretation of Contract Terms and No Monetary Amount Needed to be Stated**

The Government has moved to dismiss the following six claims for a failure to state a sum certain. All of these six claims, however, are simply seeking an interpretation of contract terms for which no monetary amount need be stated. CW Government Travel, Inc. v. United States, 63 Fed. Cl. 369, 382 (2004); Emery Worldwide Airlines, Inc., v. United States, 47 Fed. Cl. 461 (2000); GPA-I, LP v. United States, 46 Fed Cl. 762 (2000). See also Compl., Count III, "Declaratory Judgment."

**Claim No. 6 – Unit 952**

By letter dated January 21, 2004, North Star, referencing Section C.1(S) of the Lease, requested a contracting officer's final decision on: "(1) whether or not the flooding damage to Unit 952 is attributable to an 'act of God' or a result of the Government's failure to ensure that

the unit was properly maintained when the unit was in its exclusive possession and control, and (2) whether the Government shall continue to make rental payments to North Star while North Star conducted repairs on the unit." App. 38-39. On March 19, 2004, the contracting officer issued a decision that the water damage to Unit 952 was caused by a frozen drain pipe, that the actions taken by the Government were appropriate, that the water to the toilet was turned off at the time of the cleaning inspection, that the problem with the toilet did not require notification to North Star, that North Star should have discovered problems with the toilet as part of its preventative maintenance, and that the damage was North Star's responsibility. Compl. ¶ 42.

North Star's claim relating to Unit 952 was a request for an interpretation of contract terms for which no monetary amount need be stated. Accordingly, the Government's motion to dismiss this claim for a failure to state a monetary amount must be denied.

**Claim No. 8 – Units 619, 806, 1098 and 1254 – Cleaning Downtime**

By letter dated December 9, 2003, North Star requested a final decision of the contracting officer with regard to Units 619, 806, 1048 and 1254. Specifically, North Star requested whether under the Lease "North Star will be given the amount of time that is determined by North Star to do the work and that North Star's downtime allowance will be adjusted accordingly to complete the change of occupancy work based upon North Star's determination of down days required to do the work." App. 40. By letter dated February 9, 2004, the contracting officer declined to issue a final decision because he contended that the claim implicated the same allegations which were already pending before the Court of Federal Claims. Compl. ¶ 70.

North Star's claim relating to the cleaning downtime of Units 619, 806, 1098 and 1254 was a request for an interpretation of contract terms for which no monetary amount need be stated. Accordingly, Government's motion to dismiss this claim for a failure to state a monetary amount must be denied.

**Claim No. 10 – Notice of Acceptance Inspection**

By letter dated April 12, 2004, North Star, citing Section C 2(a) of the Lease, requested a contracting officer's final decision on whether: "[t]he Government is required or not to provide North Star notification of the time of the acceptance inspection. In addition, if the Government changes the time of the inspection, is it required or not required to give North Star notice under Section C 2(a) of the Lease?" App. 41. By letter dated May 24, 2004, the contracting officer declined to issue a final decision because he contended that the claim implicated the same allegations already pending before the Court of Federal Claims. Compl. ¶ 79.

North Star's claim relating to Notice of Acceptance Inspections was a request for an interpretation of contract terms for which no monetary amount need be stated. Accordingly, the Government's motion to dismiss this claim for a failure to state a monetary amount must be denied.

**Claim No. 11 – Deficiency Lists**

By letter dated April 12, 2004, North Star, citing the Lease, requested a contracting officer's final decision on "[w]hether or not the Government may include occupancy responsibility and self-help as Government responsibility items on the deficiency list generated at the acceptance inspection. If the contracting officer finds the Government may include these items on the deficiency list, North Star requests a contracting officer's decision on whether the Government must issue a work authorization for these times when it gives a deficiency list to North Star and whether the time for correction of these items can or cannot be used to assess downtime against North Star." App. 42. By letter dated May 24, 2004, the contracting officer declined to issue a final decision because he contended the claim implicated the same allegations already pending before the Court of Federal Claims. Compl. ¶ 82.

North Star's claim relating to the Government's inclusion of occupant damage and "self help" items on deficiency lists, was clearly a request for an interpretation of contract terms, for which no monetary amount need be stated. The Government's motion to dismiss the claim for a failure to state a monetary amount should therefore be denied.

**Claim No. 12 – Government Delay in Conducting Acceptance and Correction Inspections**

By letter dated April 12, 2004, North Star requested a final decision of the contracting officer on whether under the Lease "[t]he Government can charge North Star with downtime days when North Star does not have the unit in its possession and control." App. 43. By letter dated May 24, 2004, the contracting officer declined to issue a final decision because he contended the claim implicated the same allegations which were pending before the Court of Federal Claims. Compl. ¶ 86.

North Star's claim relating to Government delays in conducting inspection and correction inspections was a request for an interpretation of contract terms, for which no monetary amount need be stated. The Government's motion to dismiss the claim for a failure to state a monetary amount must therefore be denied.

**Claim No. 13 – Contracting Officer's Representative's Lack of Independence**

By letter dated October 10, 2003, North Star requested a contracting officer's final decision on the issue of the contracting officer's representative ("COR") "Rodney Everett's ability to provide independent assessments of disputed issues under the Lease while acting as a Housing representative." App. 44. On February 18, 2004, the contracting officer issued a decision that the COR had performed his duties appropriately, in a manner independent from interference or undue influence from the Housing Office Staff. Compl. ¶ 94.

North Star's claim relating to the COR's lack of independence was a request for an interpretation of contract terms, for which no amount need be stated. The Government's motion to dismiss the claim for a failure to state a monetary amount must therefore be denied.

## III. CONCLUSION

For the reasons set forth above, the Government's motion to dismiss should be denied in its entirety.

Dated: September 14, 2006

Respectfully submitted,

s/Paul W. Killian

______________________________

PAUL W. KILLIAN

Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 887-4031
Fax: (202) 887-4288

Counsel for Plaintiff

**CERTIFICATE OF FILING**

I hereby certify that a true and correct copy of the foregoing Opposition to Defendant's Motion to Dismiss was filed electronically on this 14th day of September 2006. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Paul W. Killian

______________________________
PAUL W. KILLIAN